IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD EUBANKS, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 12-1741 |
| SUNOCO LOGISTICS PARTNERS, LP, : | |
| : | |
| Defendant. : | |

**MEMORANDUM**

YOHN, J.                                                                                         September 5, 2012

Plaintiff, Ronald Eubanks, brings this action against the defendant, Sunoco Partners, LLC[1] ("Sunoco"), alleging unlawful racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981; and the Pennsylvania Human Relations Act, 43 Pa. Cons. St. § 951 *et seq.* ("PHRA"). Before me is Sunoco's motion to dismiss Eubanks's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set out below, I conclude that dismissal would be inappropriate at this stage of the litigation.

**I.      Factual and Procedural Background**

Eubanks, an African-American individual, was hired by Sunoco in April 1998. (1st Am. Compl. ¶¶ 15-16.) He continues to work there, and has most recently held the position of "instrument technician." (*Id.* ¶ 17.)

On March 18, 2009, Sunoco's area manager, Kimberly Legge, issued a written warning to

---

[1] The original complaint in this action mistakenly named the defendant as "Sunoco Logistics Partners, LP."

Eubanks. (*Id.* ¶ 18.) The complaint specifies that Legge is Caucasian. (*Id.*) Eubanks received the warning in part because two company laptop computers were stolen from a company car that was unlocked and parked in front of his home. (*Id.* ¶ 19; Mem. of Law in Supp. of Sunoco's Mot. to Dismiss 1st Am. Compl. ("Def.'s Mot. to Dismiss") Ex. A.) In addition, the warning referenced two prior incidents, in 2004 and 2007, in which a company vehicle was struck and damaged while parked in front of Eubanks's home. (1st Am. Compl. ¶ 20; Def.'s Mot. to Dismiss Ex. A.) The warning cited the theft and the collisions as examples of Eubanks's "irresponsibility," and as a result of the warning, Eubanks lost the privilege of parking his company vehicle at his home. (1st Am. Compl. ¶¶ 20-21; Def.'s Mot. to Dismiss Ex. A.) The warning letter was also placed in Eubanks's personnel file. (Def.'s Mot. to Dismiss Ex. A.)

Eubanks further alleges that Francis Gillon, a Caucasian individual who performs the same duties as Eubanks and who is under the same supervision, was treated more favorably than him. (1st Am. Compl. ¶ 22.) Specifically, Gillon's company laptop was stolen from an unlocked company car parked at Gillon's residence, and Gillon was involved in an "at fault accident" while using a company car. (*Id.* ¶¶ 23, 25.) Gillon received no discipline as a result of either incident. (*Id.* ¶¶ 24-25.)

Based on these alleged facts, Eubanks claims that Sunoco has subjected him to "an ongoing pattern of discrimination based on his race." (*Id.* ¶ 26.) He commenced this action on April 5, 2012, and filed his first amended complaint on June 18, 2012. Sunoco filed its motion to dismiss the first amended complaint on June 28, 2012. It argues that the complaint fails to state a claim under Title VII, section 1981, or the PHRA because it does not adequately allege an adverse employment action as required by those statutes.

## II. Discussion

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain sufficient factual matter to be plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient. *Id.*

Thus, the Third Circuit has developed a three-step approach. "First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation marks and citations omitted).

### B. Application

I begin by noting the elements Eubanks must plead. "In the absence of direct evidence of

3

discrimination, a plaintiff may prove discrimination under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 444 (3d Cir. 2011). To establish a prima facie case, Eubanks must show that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Id.* (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate reason for the adverse employment action. *Makky,* 541 F.3d at 214. If the defendant does so, the burden shifts back to the plaintiff to show that the articulated reason is pretextual. *Id.*[2]

The parties join issue solely on the question of whether the complaint sufficiently alleges an "adverse employment action." An adverse employment action is "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Mieczkowski*, 414 F. App'x at 445 (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "[A]n adverse employment action 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Langley v. Merck & Co., Inc.*, No. 04-3794, 2005 WL 1279108, at *3 (E.D. Pa. May 25, 2005) (quoting *Crady v. Liberty*

---

[2] The requirements of Eubanks's Title VII, section 1981, and PHRA claims are all the same. *See Mieczkowski*, 414 F. App'x at 445 n.2; *Beaubrun v. Thomas Jefferson Univ.*, 578 F. Supp. 2d 777, 781 n.5 (E.D. Pa. 2008). Thus, I treat the three claims as if they were one for purposes of this opinion.

*Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Sunoco argues that the adverse employment action alleged by Eubanks is too trivial to support a prima facie case of discrimination. Eubanks's action stems entirely from the warning of March 18, 2009. This warning gave rise to two consequences that could constitute adverse employment actions—first, Eubanks lost the right to take a company vehicle home, and second, the disciplinary letter was placed in Eubanks's personnel file. If either of these consequences could possibly be serious enough to support Eubanks's claim under the *McDonnell* framework, then Sunoco's motion to dismiss must fail.

I conclude that the allegation that Eubanks's received a reprimand letter in his personnel file is sufficient support for his claim such that his complaint survives the instant Rule 12(b)(6) motion. Sunoco points to a number of cases that it believes stand for the proposition that reprimand letters cannot give rise to an actionable discrimination claim. (Def.'s Mot. to Dismiss at 6-11.)  But most of these cases were decided at the summary-judgment stage; this allowed the plaintiffs to explore the impact of the reprimand letters on the terms of plaintiffs' employment. Thus, in *Mieczkowski*, the plaintiff was at least given some chance to "demonstrate[] how the letters materially changed her employment status." 414 F. App'x at 447. Similarly, the Third Circuit made clear in *Weston v. Pennsylvania* that, while it rejected the presumption that written reprimands *always* constitute adverse employment actions, a reprimand certainly *can* constitute an adverse action where it "effect[s] a material change in the terms or conditions of [plaintiff's] employment." 251 F.3d 420, 431 (3d Cir. 2001), *abrogated on other grounds by Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The one case that was resolved on a Rule 12(b)(6) motion involved reprimands that were rescinded, such that they could not possibly affect

plaintiff's terms of employment. *Gonzales v. Potter*, No. 09-0534, 2010 WL 2196287, at *6 (W.D. Pa. June 1, 2010) ("Plaintiff acknowledges that these actions did not have any impact on plaintiff's employment status as a letter carrier for defendant, and that defendant rescinded both letters and any reference to them from plaintiff's employment file.").

    At this stage in the litigation, I do not ask whether Eubanks will be able to *prove* the necessary elements of a prima facie case of discrimination; rather, I ask only if he has "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (emphasizing that "vastly different" standards are applicable in the Rule 12(b)(6) versus summary-judgment context). Here, it seems entirely plausible that the filed reprimand could sufficiently impact the terms of Eubanks's employment to constitute an adverse employment action, and that discovery could reveal such an impact. After all, one the main purposes of keeping a personnel file is to develop a record on which to base future promotion, transfer, or demotion decisions. Foreclosure of promotion opportunities can certainly rise to the level of an adverse employment action, and the discipline here may materially limit Eubanks's opportunities for advancement. *Cf. Langley*, 2005 WL 1279108, at *3 ("[plaintiff] presents no evidence to prove her new title is a dead-end position").[3] In light of these considerations, Eubanks should be afforded an opportunity to

---

[3] Furthermore, the *Mieczkowski* court focused on the fact that the reprimand letters in that case "neither warned of future disciplinary action nor termination." 414 F. App'x at 447. This is in stark contrast to the written reprimand that Eubanks received: "[c]ontinued episodes of irresponsible placement of or maintenance for company property or any other infraction of the Company's policy and/or procedures will subject you to disciplinary action up to and including termination." (Def.'s Mot. to Dismiss Ex. A.) Such language bolsters Eubanks's claim that he was subjected to an adverse employment action.
    I note that I can consider the March 18, 2009, letter without converting the insant motion to dismiss into a motion for summary judgment because the document is central to Eubank's

explore "[t]he full effect of a written . . . accusation of 'irresponsibility' . . . on his job status and promotional or transfer prospects."[4] (Pl.'s Mem. of Law in Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") at 5-6.)

Because I conclude that Eubanks's allegations with respect to the written reprimand are sufficient to overcome Sunoco's motion to dismiss, I need not address whether the loss of home-use of a company car could plausibly support Eubanks's claims. I note, however, that the authorities cited by the defendant cast substantial doubt on the vitality of this argument. (*See* Def.'s Mot. to Dismiss at 7-9.)

**III.   Conclusion**

For the reasons discussed above, I will deny Sunoco's motion to dismiss. An appropriate order follows.

---

claim and it is referenced in his first amended complaint. *See Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548, 559-60 (3d Cir. 2002).

[4] Sunoco relies solely on the argument that Eubanks has not alleged an adverse employment action. But for the sake of thoroughness, I note that Eubanks has also adequately pleaded the fourth element of a prima facie case of discrimination—"the action occurred under circumstances that could give rise to an inference of intentional discrimination." He has done so by alleging that Mr. Gillon, a Caucasian co-worker, received no discipline for committing substantially similar acts and omissions. (1st Am. Compl. ¶¶ 22-26.) Because Eubanks has alleged a prima facie case of discrimination, and no nondiscriminatory reason for Sunoco's action is readily apparent, Eubanks has adequately stated a claim under the relevant statutes.